IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-02088-WYD

JEREMY PINSON,

      Applicant,

v.

BLAKE DAVIS,

      Respondent.

---

## ORDER OF DISMISSAL

---

## I.  BACKGROUND

Applicant Jeremy Pinson is in the custody of the United States Bureau of Prisons (BOP) and currently is incarcerated at the United States Penitentiary in Florence, Colorado.  The matter before me is Applicant's *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Doc. No. 1, in which he asserts his due process rights were violated in four separate disciplinary proceedings.  Respondent was directed to show cause why relief should not be granted regarding the two disciplinary proceedings, which he did on December 29, 2011.  Applicant filed a Reply on January 6, 2011.  This matter now is ripe for decision.

## II.  ANALYSIS

### A.  Standard of Review

In considering Applicant's filings, I am mindful of his *pro se* status, and accordingly, read his pleadings liberally.  *Haines v. Kerner,* 404 U.S. 519, 520-21

(1972).  However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Applicant of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, I will treat Applicant according to the same standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. United States,* 508 U.S. 106, 113 (1993); *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994).

      B.  Due Process in a Disciplinary Proceeding

      As a federal prisoner, Applicant has a constitutionally protected liberty interest in his earned, good conduct time.  *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987).  Therefore, he was entitled to due process at the disciplinary hearings in question.  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Rather, adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against him no less than twenty-four hours in advance of the disciplinary hearing, an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied.  *See id.* at 563-66; *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990).  There also must be some evidence to support a

2

disciplinary conviction.  *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

"Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *See Hill*, 472 U.S. at 455-56; *see also Mitchell*, 80 F.3d at 1445 (citing *Hill*).  The disciplinary decision will be upheld even if the evidence supporting the decision is "meager."  *Mitchell*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

Constitutionally adequate due process at a prison disciplinary hearing does not require that an applicant be informed of every detail of the charges against him so that he can prepare what in his opinion is the best defense.  It only requires that the applicant be informed of the charges to enable him to marshal the facts and prepare a defense.  *Wolff*, 418 U.S. at 564.

C.  Incident Report Nos. 2073534 and 2073536

Applicant asserts that in Incident Report (IR) Nos. 2073534 and 2073536 he was charged for the same offense.  Application at 3.  He further contends that in IR No. 2073536 he was found guilty without evidence and was sanctioned on a charge that had been expunged.  *Id.*  Applicant also contends that in IR No. 2073534 he was found guilty without evidence, denied witnesses, and received the incident report more than twenty-four hours after the incident.  *Id.*  He further asserts that in IR No. 2073534 he was denied staff representation and he was not given a mental health evaluation.  *Id.*

With respect to IR No. 2073534, Respondent asserts that

Senior Officer J., Seehafer issued Incident Report 2073534 on September 30, 2010, for Offense Code 224, "Assaulting any Person." Ex. A, Att. H.  The report was delivered to Pinson on October 1, 2010.  Officer Seehafer initiated the Incident Report after Pinson punched him in the stomach.  *Id.*  The alleged assault occurred as part of the misconduct charged in Incident Report 2073536.  A Unit Disciplinary Committee referred the charge to a Disciplinary Hearing Officer.  *Id.*

On October 7, 2010, Pinson was informed of his rights related to the scheduled Disciplinary Hearing.  Ex. A, Att. I.

Pinson was given notice of the Disciplinary Hearing on October 7, 2010.  Ex. A, Att. J.  Prior to the hearing, Pinson requested to call witnesses.  *Id.*, p. 2.  Pinson, however, waived his right to a disciplinary hearing on December 4, 2010.  Ex. A, Att. E and Att. F (applicable to Incident Report 2073534).

A Discipline Hearing was held on December 3, 2010, and Pinson was found guilty of Offense 224 by DHO Mitchell based on Officer Seehafer's statement.  Ex. A, Att. L.  Pinson waived his right to staff representation.  *Id.*  He did not appear at the hearing and did not admit or deny the charges.  *Id.*  Pinson was sanctioned with a loss of 27 days good conduct time, 30 days disciplinary segregation, 9 months loss of commissary privileges and loss of telephone privileges.  *Id.*  Pinson was allowed to appeal the decision.  *Id.*  Pinson was provided a copy of the Disciplinary Report.  *Id.*, p. 3.

Resp., Doc. No. 14 at 4.

With respect to IR No. 2073536, Respondent asserts that

Lieutenant John Baker issued Pinson Incident Report 2073536 on September 30,2010, for "Assaulting any Person Threatening another with bodily harm."  Ex. A, Att. B.  According to Lieutenant Baker, Pinson broke free of his restraints and became beligerant [sic] toward prison staff.  *Id.*  The Incident Report was delivered to Pinson on October 1, 2010.  A Unit Disciplinary Committee referred the charge to a Disciplinary Hearing Officer.  *Id.*

On October 7, 2010, Pinson was informed of his rights related to the Disciplinary Hearing.  Ex. A, Att. C.

Pinson was given notice of the Disciplinary Hearing on October 7, 2010. Ex. A, Att. D.  Prior to the hearing Pinson requested to call witnesses, but waived his right at the hearing.  *Id.*, p. 2.

Pinson later waived his right to a disciplinary hearing on December 4, 2010.  Ex. A, Att. E and Att. F.

A Discipline Hearing was held on December 3, 2010, and Pinson was found guilty of Offense 203 by DHO Mitchell based on Lieutenant Baker's statement.  Ex. A, Att. G.  Pinson waived his right to staff representation.  *Id.*  He did not appear at the hearing and did not admit or deny the charges.  *Id.*  Pinson was sanctioned with a loss of 27 days good conduct time, 30 days disciplinary segregation, 180 days loss of commissary privileges, and 60 days loss of personal property.  Pinson was provided a copy of the Disciplinary Report.  *Id.*  He was allowed to appeal the decision.  *Id.*

In his Reply, Applicant asserts that he did not waive his DHO hearings and right to call witnesses in either IR No. 2073536 or 2073534.  Reply at 2.

1. Charged Twice For the Same Offense

There is no basis for finding that Applicant was charged and convicted of the same offenses in IR Nos. 2073534 and 2073536.  The DHO reports clearly indicate that Applicant was charged and convicted of only Offense 203, Threatening Another with Bodily Harm, in IR No. 2073536, and of only Offense 224, Assaulting Any Person, in IR No. 2073534.  *See* Resp., Doc. Nos. 14-8 at 2 and 14-14 at 2.  Also, IR No. 2073536 does not state that the assault charge against Applicant for assaulting Officer Seehafer was not credible and was discharged.  Incident Report No. 2073534 first was written to include an assault charge, but at the time of the hearing only the threat charge was at issue for consideration by the DHO.  Applicant's double charging claim, therefore, lacks merit and will be dismissed.

5

2.  Denial of Witnesses

Applicant's denial of witnesses claims, with respect to IR Nos. 2073534 and 2073536, are vague and conclusory.  Nothing Applicant asserts in either the Application or the Reply supports a finding that the failure to call witnesses in his disciplinary proceedings violated his due process rights.  Even if he did not waive his right to a disciplinary hearing after he had requested to call fifteen witnesses, Applicant does not provide specific information on what each of the fifteen inmates would have stated at the hearing.  *See Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993) (no due process violation found when plaintiff failed to show how a testimony from a witness he was not allowed to call would have affected the outcome of his case).  Although prison officials must consider an inmate's request to call a witness on an individual basis, errors in denying witness testimony are subject to a harmless error review.  *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007) (citations omitted).

Also, nothing in the Antoine Bruce's Declaration that is attached to Applicant's Reply, Doc. No. 15 at 15, states what the fifteen witnesses would have stated if called to testify at Applicant's disciplinary hearings.  Inmate Bruce also does not attest that he knows specifically that in IR Nos. 2073534 and 2073536 Applicant did not waive his right to attend the hearings.  Based on the above findings, the DHO's denial of witnesses in IR Nos. 2073534 and 2073536 was at best a harmless error.  I find no violation of Applicant's due process by the denial.

3.  Denial of Staff Representation

Applicant's denial of staff representation claim also is vague and conclusory.

Nothing Applicant presents or inmate James Chatman states in his Declaration attached to Applicant's Reply, Doc. No. 15 at 13, demonstrates that Applicant was denied staff representation or that the DHO falsified documents in IR Nos. 2073534 and 2073536.

Nonetheless, "[a] prisoner does not have a general constitutional right to have a staff representative assist him during the disciplinary process."  *Jordan v. Wiley,* 2009 WL 1698509, *9 (D. Colo. June 17, 2009) (citing *Wolff,* 418 U.S. at 570)), *aff'd*, 411 F. App'x 201 (10th Cir. 2011).  "Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or 'the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.' "  *Id.* (quoting *Wolff,* 418 U.S. at 570).  Where there is no constitutional right to staff assistance, there can be no due process violation based on inadequate staff assistance.  *See, e.g., Duarte v. Turner,* No. 93-2427, 46 F.3d 1133, *3 (7th Cir. Feb. 10, 1995) (unpublished) (citing *Wolff*, 418 U.S. at 570).

There is no indication that the issues involved in IR Nos. 2073534 and 2073536 were complex or that Applicant is illiterate.  Applicant, therefore, was provided with all the process he was due.  I find no violation of Applicant's due process by the alleged denial of a staff representative in either disciplinary proceeding.

4.  Untimely Notification

Applicant contends that BOP regulations were violated when prison staff failed to provide him with a copy IR No. 2073534 within twenty-four hours of the incident at issue.  "[A] failure to adhere to administrative regulations does not equate to a

constitutional violation." *See Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)).  A review of an applicant's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell*, 80 F.3d at 1445; *e.g.*, *Diaz v. McGuire*, 154 F. App'x 81, 84-85 (10th Cir. 2005) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause), *cert. denied,* 546 U.S. 1221 (2006).  *Wolff* only requires that Applicant be provided with a notice of the charges against him within twenty-four hours prior to the disciplinary hearing.  *Wolff*, 418 U.S. at 563-66.

Applicant asserts in his Reply that he received notification of IR No. 2073534 on October 1, 2010.  *See* Reply at 1.  Respondent has provided documentation, which Applicant does not deny, that the disciplinary hearing was held on December 3, 2010.  *See* Resp., Doc. No. 14-8 at 1.  The *Wolff* requirement was met.  Finally, prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995).  This claim will be denied as legally frivolous.

5.  Conclusion

Based on the above findings, Applicant fails to assert a violation of his due process rights in the IR Nos. 2073534 and 2073536 disciplinary proceedings.

D.  Incident Report No. 2076611

As for IR No. 2076611, Applicant asserts that the incident report was not

provided to him within twenty-four hours after the incident, the disciplinary action was

fabricated in retaliation for his filing a grievance against the reporting officer, and there

was insufficient evidence to support the guilty finding.  Application at 3.

Respondent asserts that

> Correctional Officer Ramsey issued Pinson Incident Report
> 2076611 on October 9, 2010, for destruction of government property after
> he started a fire (Offense Code 103).  Ex. A, Att. M.  The incident report
> was delivered to Pinson on November 28, 2010.  *Id.*  Pinson waived his
> right to appear at the Unit Disciplinary Hearing.  *Id.*  A Unit Disciplinary
> Committee referred the charge to a Disciplinary Hearing Officer.  *Id.*

> The DHO returned the report in order for it to be re-written and
> thereafter Warden John T. Rathman granted permission for another Unit
> Discipline Hearing to be conducted.  Ex. A, Att. N.

> On October 21, 2010, Pinson was informed of his rights related to
> the Disciplinary Hearing.  Ex. A, Att. O.

> Pinson was given notice of the Disciplinary Hearing on October 21,
> 2010.  Ex. A, Att. P.  Pinson requested a staff representative.  *Id.*  He also
> requested to call witnesses but did not provide their names in the Notice of
> Discipline Hearing.  *Id.*

> Pinson waived his right to appear at the December 14, 2010,
> disciplinary hearing.  Ex. A, Att. Q.

> Pinson was given notice of his rights related to the Discipline
> Hearing.  Ex. A, Att. R.

> A Discipline Hearing was held on December 22, 2010, and Pinson
> was found guilty of Offense 329 (a lesser charge than 103) by DHO
> Mitchell based on the facts contained in the Incident Report.  Ex. A, Att. M.
> Pinson waived his right to staff representation.  Ex. A, Att. S.  He did not
> appear at the hearing and did not admit or deny the charges.  *Id.*  Pinson
> was sanctioned with 15 days of disciplinary segregation.  Pinson was

provided a copy of the Disciplinary Report.  *Id.*, p. 3.  Pinson was allowed
to appeal the decision.  *Id.*

In his Reply, Applicant asserts that Respondent's documents are conflicting.  He
contends that the dates shown on the documents indicating when the incident report
was written and the UDC hearing was held are incorrect.  Reply at 3.  He also asserts
that Respondent's statement in the Response that Applicant waived his right to appear
at the DHO hearing conflicts with the attached DHO report, which indicates he did
appear at the hearing.  Reply at 4-5.  He further asserts that inmate Edwin Guzman
started the fire and that he appeared before the UDC and requested inmate Guzman as
a witness and Officer Frodyma as a staff representative.  Reply (Declaration) at 10.
Applicant contends that at the DHO hearing he was advised that Frodyma was on
vacation, there were no escorts to bring Guzman to the hearing, and the hearing would
not be postponed.  *Id.*  Finally, Applicant asserts that he denied the charge.  *Id.*

First, I note that although Applicant was charged with a 103 Offense Code,
Setting a Fire, the charge was reduced to a 329 Offense Code, Destroying Government
Property of $100.00 or less, and he was sanctioned with fifteen days of disciplinary
segregation and property impoundment.  Without a loss of good conduct time Applicant
fails to assert a constitutionally protected liberty interest.  Therefore, he was not entitled
to due process at the disciplinary hearing in question and his claims are legally frivolous.
Even if he was entitled to due process, based on the following findings he fails to assert
a violation of his due process rights.

### 1.  Retaliation

Applicant's claim is self-serving.  Other than to state that IR No. 2076611 was "fabricated in retaliation for a grievance against the reporting officer," *See* Application at 3, Applicant provides no specific details regarding the alleged retaliation.  "[I]t is imperative that [applicant's] pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *See Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  Applicant "must prove that 'but for' the retaliatory motive, the incidents to which he refers ... would not have taken place."  *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998).  Applicant has failed to do so.  I, therefore, find that because Applicant's retaliation claim lacks merit he fails to assert a violation of his due process rights.

### 2.  Lack of Evidence/Denial of Witnesses, Staff Representation, and Video Recording

Applicant's claims are self-serving and unbelievable.  He did not assert in the Application that another inmate committed the offense.  Only after Respondent provided copies of the DHO report and other exhibits did he assert that he did not commit the offense.  Also, he did not assert that he was denied witnesses, a staff representative, and the video recording in the Application.  Furthermore, a discrepancy in Respondent's statements and attached exhibits does not necessarily result in my finding that Applicant was denied due process in the IR No. 2076611 disciplinary hearing.  For the following reasons, I find that Applicant was not denied due process even if he was denied staff

representation, a witness, and presentation of a video recording of the incident.

First, Applicant does not have a right to staff representation during the disciplinary process. *Jordan*, 2009 WL 1698509 at *9. Inmates are provided with a staff representative only where the inmate is illiterate or complexity of the issue precludes the inmate to collect and present the evidence necessary for an adequate comprehension of the case. *Id.* (quoting *Wolff*, 418 U.S. at 570). Where there is no constitutional right to staff assistance, there can be no due process violation based on inadequate staff assistance. *See, e.g., Duarte,* No. 93-2427, 46 F.3d at *3 (citing *Wolff*, 418 U.S. at 570).

There is no indication that the issues involved in IR No. 2076611 were complex or that Applicant is illiterate. Applicant, therefore, was provided with all the process he was due.

Second, nothing Applicant asserts in either the Application or the Reply supports a finding that the refusal by the DHO to call inmate Guzman as a witness in the IR No. 2076611 disciplinary proceeding violated his due process rights. Applicant does not provide specific information on what inmate Guzman would have stated at the hearing and his assertion that Guzman would incriminate himself is highly unlikely. *See Chesson*, 986 F.2d at 366. Although prison officials must consider an inmate's request to call a witness on an individual basis, errors in denying witness testimony are subject to a harmless error review. *Howard*, 487 F.3d at 813. Applicant, therefore, was not denied due process when the DHO refused to postpone or continue the hearing to allow inmate Guzman to testify.

Third, Applicant's claim that he requested a copy of the video recording of the incident at the DHO hearing is not credible.  It is unreasonable that Applicant would only request a staff representative and witnesses at his UDC hearing, as he alleged he did, but not request that the staff representative review the video surveillance tape of the incident similar to what he alleged he requested at the DHO hearing.  Applicant, therefore, was not denied due process by the DHO's refusal to postpone the hearing for a review of a video surveillance tape .

3.  Untimely Notification

Applicant contends prison staff violated BOP regulations when IR No. 2076611 was not written within twenty-four hours of the incident.  A failure to adhere to administrative regulations does not equate to a constitutional.  *Hovater*, 1 F.3d at 1068 n.4.

I further find the timely notice requirement under *Wolff* was met.  Applicant asserts in his Reply that he received notification of IR No. 2076611 on November 28, 2010, *see* Reply at 2, and Respondent has provided documentation, which Applicant does not deny, that the disciplinary hearing was held on December 22, 2010.  Resp., Doc. No. 14-22 at 1.  I also note that Applicant's alleged discrepancies in dates regarding the documentation that Respondent submitted to the Court addressing IR No. 2076611 is explained by the DHO's request that the incident report be rewritten and the second UDC and DHO hearings that followed.  Therefore, Applicant fails to assert a violation of his due process rights based on an untimely notice.

4. Conclusion

Based on the above findings, I find Applicant fails to assert a violation of his due process rights in the IR No. 2076611 disciplinary hearing.  Nonetheless, I will deny Applicant's claims regarding IR No. 2076611 as legally frivolous for lack of a liberty interest.

E.  Incident Report No. 2108781

Finally, with respect to IR No. 2108781, Applicant contends he was refused certain witnesses, without explanation, while the three allowed witnesses were found to lack credibility.  Application at 4.  Applicant further asserts that the DHO refused to introduce video evidence of the reporting officer kicking him and to call the warden and captain as witnesses to Applicant's filing of a grievance against the reporting officer.  *Id.* Also, Applicant asserts that he was first refused staff representation by the DHO, then was appointed the officer who escorted him to the hearing, but he was not allowed time to confer and gather evidence and witness statements with the appointed representative.  *Id.*  Applicant seeks restoration of his good conduct time and privileges and reversal of his adverse classification.

Respondent asserts that

> Physicians Assistant Mounir Mourtada issued Pinson Incident Report 2108781 on January 2, 2011, Offense Code 224 ("Assault toward staff") and Code 312 ("Insolence toward a staff" [sic]).  Ex. A, Att. T. During a visit by the PA, Pinson became disruptive, spitting and throwing an unknown liquid on Mr. Mourtada.  The report was delivered to Pinson on January 2, 2010[1].  *Id.*  A Unit Disciplinary Committee referred the charge to a Disciplinary Hearing Officer.  *Id.*  Pinson denied the

[1]  Respondent inadvertently referred to 2010 rather than 2011.

14

charges.  *Id.*

On January 6, 2011, Pinson was informed of his rights related to the Disciplinary Hearing.  Ex. A, Att. U.

Pinson was given notice of the Disciplinary Hearing on January 6, 2011.  Ex. A, Att. V.  Pinson requested to call witnesses.  *Id.*, p. 2.

A Discipline Hearing was held on January 21, 2011.  Ex. A, Att. W. Pinson was accorded a staff representative who was present at the hearing.  *Id.*  Pinson was found guilty of Offense 224 and 312 by DHO Mitchell based on the facts contained in the report and the statement prepared by Correctional Officer J. Locker.  *Id.*; Ex. A, Att. X.  For violating Code 224, Pinson was sanctioned with a loss of 27 days good time and 30 days disciplinary segregation.  For violating Code 312, he was sanctioned with a loss of 15 days disciplinary segregation and 15 days of personal property impoundment.  *Id.*  Pinson was provided a copy of the Disciplinary Report.  *Id.*, p. 3.  Pinson was given the opportunity to appeal the decision.  *Id.*

Resp., Doc. No. 14 at 6-7.

In his Reply, Applicant further asserts that he requested Connie Duncan as a staff representative at the UDC hearing and three witnesses, including inmates Burke and Ortiz and Wiggins, but the DHO would not call these witnesses and falsely reported that Applicant waived inmates Wiggins and Ortiz.  Reply (Decl.) at 11.  Finally, Applicant asserts that he was not provided a copy of Officer Locker's memorandum, which was used by the DHO to support his findings that Applicant was guilty of the offenses in IR No. 2108781.  *Id.*

1.  Denial of Video and Witnesses to Prove Retaliation

As stated above, Applicant asserts that the DHO refused to introduce video evidence at the disciplinary hearing in IR No. 2108781 that would show the reporting officer previously kicked Applicant and that the DHO refused to call the warden and the

15

captain who would testify that Applicant filed a grievance against the reporting officer for kicking him.  Applicant concludes that this evidence would prove the reporting officer filed the incident report in retaliation for Applicant filing the grievance and prompting an investigation against him.

A claim of retaliation must assert specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.  *See Frazier*, 922 F.2d at 562 n.1. Applicant also must prove that but for the retaliatory motive the incidents to which he refers would not have taken place.  *Peterson,* 149 F.3d at 1144.

Applicant does not assert specific facts that demonstrate but for his filing a grievance against the reporting officer he would not have been charged with assaulting and being insolent toward an officer.  Applicant does not state that the grievance was filed in close proximity to the incident report giving cause for a retaliatory motive, and he fails to demonstrate that there is no evidence to support the DHO finding that he spit on PA Mourtada, threw a liquid on Mourtada, and was insolent to prison staff.   Applicant's retaliation claim is denied as legally frivolous.

2.  Denial of Requested Staff Representation

Applicant does not have a right to staff representation during the disciplinary process. *Jordan*, 2009 WL 1698509 at *9.  Inmates are provided with a staff representative only where the inmate is illiterate or complexity of the issue precludes the inmate to collect and present the evidence necessary for an adequate comprehension of the case.  *Id.* (quoting *Wolff,* 418 U.S. at 570).  Where there is no constitutional right to staff assistance, there can be no due process violation based on

inadequate staff assistance.  *See, e.g., Duarte,* No. 93-2427, 46 F.3d at *3 (citing *Wolff*,

418 U.S. at 570).

There is no indication that the issues involving IR No. 208781 were complex or

that Applicant is illiterate.  The UDC and DHO reports show that Applicant did have staff

representative, he just did not have the representative he requested.  *See* Resp., Doc.

No. 14-26 at 14-27 at 1-2.  Applicant, therefore, was provided with all the process he

was due.

### 3.  Denial of Witnesses

Nothing Applicant asserts in either the Application or the Reply supports a finding

that the lack of witnesses in his IR No. 2108781 disciplinary proceedings violated his

due process rights.  Even if he did not waive his right to call inmates Wiggins and Ortiz,

Applicant does not provide specific information on what each of the inmates would have

stated at the hearing.  *See Chesson*, 986 F.2d at 366.  Although prison officials must

consider an inmate's request to call a witness on an individual basis, errors in denying

witness testimony are subject to a harmless error review.  *Howard*, 487 F.3d at 813.

Applicant, therefore, was provided with all the process he was due.

### 4.  Failure to Provide Relied On Evidence

As for Officer Locker's memorandum that was part of the evidence considered by

the DHO but was not provided to Applicant, as stated above, constitutionally adequate

due process only requires that the applicant be informed of the charges to enable him to

marshal the facts and prepare a defense.  *Wolff*, 418 U.S. at 564.  Applicant does not

deny that he received an incident report on January 2, 2011, and was aware of the

charges against him.  I find no violation of his due process rights in that he was not provided a copy of Locker's memorandum.

### 5.  Conclusion

Based on the above findings, I find Applicant fails to assert a violation of his due process rights in the IR No. 2108781 disciplinary hearing.

### F.  Competency Evaluation

In the Application, Applicant claims specifically that prison staff failed to conduct a mental health evaluation in IR No. 2073534.  He also asserts in his Reply that in general he has been diagnosed by the BOP as having schizophrenia and pursuant to BOP policy a mental evaluation must be conducted prior to his disciplinary proceedings to determine his responsibility for the alleged conduct.

Applicant asserts no specific reasons for finding that a mental evaluation should have been conducted prior to his disciplinary proceedings in any of the identified incident reports at issue in this action.  Pursuant to 28 U.S.C. § 541.6(b), a "person is not responsible for his/her conduct if, at the time of the conduct, as a result of a severe mental disease or defect, he/she was unable to appreciate the nature and quality or the wrongfulness of his/her acts."  Applicant does not assert that he was unable to appreciate the nature and quality of the wrongfulness of his acts in any of the disciplinary proceedings.  He only asserts that he did not commit the offense.

I further note that Applicant has attached a copy of William Holbrook's Declaration, which originally was submitted by the BOP as an exhibit in an answer to Applicant's prisoner complaint filed in the United States District Court for the District of

Northern Alabama, *see Pinson v. Reese*, No. 09-cv-02379-CLS-HGD, Doc. No. 18-29

(N.D. Ala. Filed Nov. 24, 2009).  Applicant relies on this declaration for his argument

that he is schizophrenic and, therefore, a mental evaluation must be conducted before

any disciplinary proceeding to determine whether he was responsible for his conduct.

In the declaration, Mr. Holbrook attests that part of the problem of keeping

Applicant's medical condition stable is that he is noncompliant with his medications,

even though he is continually counseled on the importance of taking all of his

medications as prescribed.  *See id.* at 3.  Applicant may not use a medical condition that

he has the ability to control but fails to do so as a basis for finding he is not responsible

for his conduct.  Accordingly, there is no basis for expunging Applicant's offenses based

on his diagnosed medical condition.

III. CONCLUSION

FOR THE FOREGOING REASONS, the Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2241 is **DENIED** and the action is **DISMISSED** with prejudice.

FURTHERMORE, leave to proceed *in forma pauperis* on appeal is **DENIED**.  I

certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in

good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal.

*See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of

appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in*

*forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty

days in accordance with Fed. R. App. P. 24.

Dated:  April 25, 2012.

BY THE COURT:


s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE